Antione Keith BARBER, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 18S00–9808–CR–434.

Supreme Court of Indiana.

Sept. 3, 1999.

849

Alan K. Wilson, Muncie, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

A jury convicted Antione Barber of murder. He was sentenced to fifty-five years imprisonment. In this direct appeal Barber raises three issues for our review: (1) whether the trial court erred in permitting the prosecuting attorney to make statements about reasonable doubt during voir dire; (2) whether the trial court erred in giving a jury instruction that did not permit the jury to define reasonable doubt for itself; and (3) whether the trial court erroneously admitted hearsay testimony. We affirm the trial court.

### Factual and Procedural Background

On the evening of November 21, 1996, King David Preston died as a result of multiple gunshot wounds in Michael Horton's apartment in Muncie. The day before, Preston and three others had robbed Antione Barber, John Ivy and Donovan Lewis at gunpoint in Tanisha Love's apartment, also in Muncie. Barber and Ivy were charged with the murder and tried separately. Several witnesses to the robbery and subsequent events testified at trial.

Love testified that, on the evening of November 20, 1996, she returned to her apartment from a trip to the store and discovered Preston and three others shouting and pointing guns at Barber, Ivy and Lewis, who were standing up against the wall. Barber, Ivy and Lewis were ordered to remove their clothing, and it was then thrown outside. Shortly thereafter, as Preston and the others left Love's apartment, one of them cut the tires on Ivy's car parked nearby.

Donnica Hall testified that as she arrived outside Love's apartment the same evening, she saw several men run out of Love's apartment, one of whom cut the tires on Ivy's car. When Hall entered the apartment, Barber and Lewis had only their boxer shorts on and Ivy was naked. After Hall returned the men's clothing, she and the three who had just been robbed left Love's apartment and later that night filed a police report. Barber or Ivy then asked Hall to give them a ride to Dayton, Ohio. She complied, and also drove them back to Muncie later that night. Over an objection by Barber, Hall testified that during the trip back to Muncie Ivy stated that he wanted to find out if the men who robbed them were still at Love's apartment to "get them."

According to Love, Barber, Ivy and a third unidentified person returned to Love's apartment at 4:00 a.m. the morning after the robbery. The three men questioned Love about her involvement in the robbery, threatened her and physically assaulted her. They left Love's apartment at approximately 6:00 p.m. to look for the men who robbed them. All three had guns.

Samuel Powell testified that at 8:30 p.m. on November 21, 1996, he encountered Barber, Ivy and a third man standing by a car outside of Horton's apartment. They asked him who was inside the apartment. Powell responded that he did not know and that no one had answered his knock. As Powell walked away from the apartment, he saw Barber and Ivy enter the apartment.

Michael Horton testified that Preston arrived at his apartment at 7:30 p.m. on the evening of the murder. When Barber entered his apartment about an hour later, Horton went across the hall to a neighbor's apartment and on the way passed Ivy, who was standing outside the apartment door. From inside his neighbor's apartment, Horton heard someone who sounded like Preston say "I ain't got your money." Gunshots followed. After Horton called the police, he returned to his apartment, saw Barber and Ivy leaving the apartment, and found Preston lying on the floor of the apartment.

## I. Voir Dire

■ "A trial judge has broad discretion in determining the propriety of questions posed to prospective jurors during voir dire and will be reversed on appeal only for an abuse of that discretion." 16 B WILLIAM ANDREW KERR, INDIANA PRACTICE § 21.5d (1998); *Von Almen v. State*, 496 N.E.2d 55, 59 (Ind.1986). Barber contends that the trial court abused its discretion by permitting the prosecuting attorney to "inform the jury that it must begin deliberations by determining whether any juror had doubt, thereby shifting the burden of proof to the defendant" during voir dire. The prosecutor's statement was as follows:

> What I say is when you go back to deliberate, you just start asking, does anybody have any doubts? Somebody going to raise their hand, yes. Take that, say what it is and you put that doubt right in the middle of the table. And you start examining that doubt. Where did it come from? Why do you have it? Then you ask yourself, does that reason.

In response to an objection by Barber that "how the jury conducts its deliberations is up to the jury .... this is not [the time] for a statement from the prosecutor about what the law is or how the jury is to conduct itself," the prosecutor then stated:

> It's certainly is time for me to, try to tell them what the law is and how they're going to apply that. There is no other time for me to do that and this is certainly the appropriate time to do that. I'm asking them to take. I'm telling them what I believe the law to be based on the instructions and asking them how they might apply that.

The trial court overruled Barber's objection.

■ As a general matter, instructing the jury on reasonable doubt is for the trial court. *See* KERR, *supra* § 22.9(b) (trial court is required to give instructions and to instruct the jury concerning all matters of law). However, as the State points out, it is permissible for the prosecutor to ask questions of potential jurors to determine whether they understand reasonable doubt and are capable of rendering a verdict in accordance with the law. *See Von Almen*, 496 N.E.2d at 59.

Moreover, if the jury had any question about who bore the burden of proof, the first sentence of the reasonable doubt instruction given as a preliminary and final instruction clearly states that: "The government has the burden of proving the defendant guilty beyond a reasonable doubt." The trial court did not abuse its discretion in permitting the prosecuting attorney to discuss reasonable doubt with prospective jurors during voir dire. *See Grant v. State,* 623 N.E.2d 1090, 1095 (Ind.Ct.App.1993).

## II. Jury Instructions

■ The trial court gave the following instruction to the jury:

The government has the burden of proving the defendant guilty beyond reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you should find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you should give him the benefit of the doubt and find him not guilty.

Barber acknowledges that this instruction was approved by a majority of this Court in *Winegeart v. State,* 665 N.E.2d 893, 902 (Ind. 1996). Nonetheless, at trial, Barber objected to the instruction because the last sentence "takes away from [the jury] their obligation to define reasonable doubt for themselves." In support of this proposition, he argued that

"there was 1989 case … a Louisiana case that went up to the Supreme Court" that said "it is up to the jury to determine what reasonable doubt means." Barber did not provide further citation at the trial. His objection was apparently based on the United States Supreme Court's decision in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), which he also cites in his brief on appeal. In that case, the Court struck down an instruction that defined reasonable doubt in terms of "grave" or "substantial uncertainty" because the instruction suggested that a greater degree of doubt was required for acquittal than was permitted by the Due Process Clause. *Id.* at 41, 111 S.Ct. 328. Because the reasonable doubt instruction given by the trial court does not require more than reasonable doubt for an acquittal, it does not violate Barber's due process rights as defined by *Cage.*[1]

■ Barber argues in his brief on appeal that the trial court erred in giving the instruction because the instruction shifted the burden of proof to him in violation of his due process rights guaranteed by the United States Constitution.[2] However, at trial, Barber's objection was that the instruction infringed on the ability of the jury to define reasonable doubt, not that it impermissibly shifted the burden of proof. Accordingly, his argument with respect to shifting the burden of proof is waived. *See* Ind. Trial Rule 51(C) ("No party may claim as error the giving of an instruction unless he objects thereto … stating distinctly the matter to which he objects and the grounds of his objection."); *Bufkin v. State,* 700 N.E.2d 1147, 1151 (Ind. 1998) (defendant limited on appeal to the specific objection at trial).

Even if Barber's claim that the instruction shifted the burden of proof was preserved, there would be no error because, as noted above, the first sentence of the instruction clearly states that the State bore the burden of proof beyond a reasonable doubt. Be-

---

1. *Cage* does not address Barber's contention that the jury must be permitted to define reasonable doubt for itself and he points to no other authority for that proposition.

2. Barber also refers to Article I, § 19 of the Indiana Constitution which speaks of "due

course of law" not the "due process" invoked by Barber. Any Indiana constitutional claim is waived for failure to present a separate cogent argument. *See Valentin v. State,* 688 N.E.2d 412, 413 (Ind.1997).

cause the trial court gave the federal judicial center's pattern instruction on reasonable doubt as recommended by a majority of this Court in *Winegeart*, we find no error.

### III. Admission of Statements by Ivy

In response to the prosecutor's question "Why did they want to find out [if the men who robbed them were at Love's house]?" Hall testified that Ivy stated "to get them." Barber contends that the trial court erred in admitting this statement because it is inadmissible hearsay. Barber made a continuing hearsay objection to all statements by Ivy, but made no specific objection to this statement.

■ Hearsay is an out of court statement offered to prove the truth of a fact asserted in the statement. Ind. Evidence Rule 801(c). The State argues that the statement, "get them," is not hearsay because it asserts no fact that is susceptible of being true or false citing *Craig v. State*, 630 N.E.2d 207, 211 (Ind.1994), which observed "[i]f the statement contains no such assertion, it cannot be hearsay." Taken in context of the question by the prosecutor, however, the statement at the very least is an assertion of Ivy's motive in returning to Love's apartment which is susceptible of being true or false. Accordingly, the statement is not admissible for this reason.

■ A "statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" is not hearsay and is therefore admissible. Ind. Evidence Rule 801(d)(2)(E). Barber argues that because the State did not present "independent evidence" of a conspiracy,—i.e., evidence apart from the statement itself—the statement is not admissible under Rule 801(d)(2)(E). For a statement to be admissible under this rule, the State must demonstrate that (1) a conspiracy existed between the declarant and the party against whom the statement is offered and (2) the statement was made during the course and in furtherance of the conspiracy. *See Wright v. State*, 690 N.E.2d 1098, 1105 (Ind.1997); 13 ROBERT LOWELL MILLER, JR., INDIANA PRACTICE § 801.423 (1995). As we recently stated, the "independent evidence" requirement is "a useful safe-guard against abusive use of co-conspirator hearsay, and [the Court] will continue to apply it to evidence proposed for admission under Rule 801(d)(2)(E)." *Lott v. State*, 690 N.E.2d 204, 209 (Ind.1997) (discussing pre-evidence rules requirement of independent evidence).

■ The trial court in this case did not make a determination as to the existence of a conspiracy. Moreover, the State did not point to anything beyond the statement itself in support of the existence of a conspiracy at the time the statement was made and cites none here. Accordingly, the trial court may have erred in admitting the statement. Even if so, "[e]rrors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *See Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind.1995); Ind. Trial Rule 61. In this case, there is significant, uncontested evidence of Barber's guilt, including Horton's testimony that within minutes after Barber entered Horton's apartment, Horton heard gunshots, and returned to his apartment to see Barber and Ivy leave the apartment and find Preston lying on the floor in a pool of blood. In light of this evidence, we cannot conclude that the erroneous admission of Ivy's statement affected Barber's substantial rights. It is not grounds for reversal.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.