**Gary COCKRELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 29A02–9911–CR–783.

Court of Appeals of Indiana.

March 12, 2001.

Jane Ruemmele, Laudig George Ruther-ford & Sipes, Peter Nugent, Nugent, Ar-nett & Oakes, Indianapolis, IN, Attorneys for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Gary Cockrell, challenges his convictions for Conspiracy to Deal in Cocaine,[1] a Class A felony, Dealing in Cocaine within one thousand feet of a public park or school,[2] a Class A felony, and Dealing in Cocaine with an aggregate weight of more than three grams,[3] a Class A felony. Upon appeal, Cockrell presents seven issues, which we consolidate and restate as whether the evidence was sufficient to support the convictions.[4] We affirm in part, reverse in part, and remand with instructions.

The facts most favorable to the jury verdict reveal that on February 3, 1998, Hamilton County Detective Sean Brady arranged a controlled purchase of cocaine from Frederick Vogg by a confidential police informant. The confidential informant entered Vogg's trailer and gave Vogg money to purchase cocaine. Vogg gave the confidential informant a pager and told him to leave the trailer. Soon thereafter, Josh Dawson arrived at the trailer. Dawson then drove to the garage of Cockrell's apartment building and bought cocaine from Cockrell. After Dawson returned to the trailer, Vogg paged the confidential informant to return. Vogg then delivered the cocaine to the confidential informant. After Vogg told the confidential informant that Cockrell was his source for the cocaine, the police expanded the investigation to include Cockrell.

The next day, the confidential informant, now accompanied by undercover Officer David Kimm, went to Vogg's trailer to purchase cocaine. After giving Vogg the purchase money, Officer Kimm and the confidential informant were given a pager and told to leave the trailer. Dawson soon arrived at Vogg's, took the money, drove to the apartment building where Cockrell lived, and bought cocaine from Cockrell. Dawson then returned to meet with Vogg and gave him the cocaine. Officer Kimm was then paged to return to Vogg's trailer, where the cocaine was delivered to him.

On February 11, 1998, the police once again arranged a controlled purchase of cocaine from Vogg. Officer Kimm went to Vogg's trailer alone and gave Vogg money to purchase cocaine. Officer Kimm remained in the trailer as Vogg met with Dawson near the office of the trailer park. Dawson again went to the parking lot of the apartment building where Cockrell lived and bought the cocaine from Cockrell. Dawson then delivered the cocaine to Vogg, who gave it to Officer Kimm.

The substance recovered from each of the three controlled purchases was tested and identified as cocaine. Cockrell was arrested and charged with four offenses. Count I of the information charged Cockrell with conspiring to deal in cocaine between February 3, 1998, and February 11, 1998. Counts II and III charged dealing in cocaine within one thousand feet of a public park or school on February 3, 1998, and February 4, 1998. Count IV charged dealing in cocaine with an aggregate weight of more than three grams on February 11, 1998.

During a jury trial, Cockrell objected to the admission of various out-of-court statements made by Vogg on the grounds that

1. I.C. 35–41–5–2, I.C. 35–48–4–1 (Burns Code Ed. Repl.1998).

2. I.C. 35–48–4–1(b)(3)(B) (Burns Code Ed. Repl.1998).

3. I.C. 35–48–4–1(b)(1) (Burns Code Ed. Repl. 1998).

4. Because of our resolution upon the issues as restated, it is unnecessary to address Cockrell's arguments concerning double jeopardy and unreasonable consecutive sentences.

the statements were hearsay. The trial court overruled the objections and allowed Vogg's statements into evidence. Cockrell also objected to the admission of the cocaine sold on February 11, 1998, claiming that a chain of custody had not been established. The trial court overruled this objection and allowed the cocaine into evidence. The jury convicted Cockrell on Count I, Count III, and Count IV. Cockrell was acquitted on Count II. Cockrell was sentenced to a total of eighty years incarceration.

## I

### Sufficiency of Evidence on Count I

■ Cockrell first claims that the evidence was insufficient to support his conviction of conspiracy to deal in cocaine. Upon review of claims of insufficient evidence, we consider only the evidence supporting the verdict and any reasonable inferences to be drawn therefrom. *Van-Matre v. State* (1999) Ind.App., 714 N.E.2d 655, 657. We will not reweigh the evidence or judge the credibility of witnesses. *Id.* at 657–58. We will affirm a conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have concluded that the defendant was guilty beyond a reasonable doubt of

the crime charged. *Id.* at 658. When a conviction is reversed due to insufficient evidence, double jeopardy precludes retrial of the overturned conviction. *Id.*

■ To convict Cockrell of conspiracy to deal in cocaine, the State had to prove that Cockrell, with the intent to commit dealing in cocaine, agreed with another person to commit that felony, and that either Cockrell or the person with whom he agreed performed an overt act in furtherance of the agreement. I.C. 35–41–5–2 (Burns Code Ed. Repl.1998). The information alleged that Cockrell, "with the intent to commit the felony of Dealing in Cocaine ... did agree with Frederick Vogg, Jr. and/or Joshua Dawson, and/or a confidential informant and/or David Kimm to commit the felony of Dealing in Cocaine." Record at 16. The information further alleged that "Frederick Vogg, Jr. did perform an overt act in furtherance of the agreement, by providing a location where cocaine could be delivered."[5] *Id.* We note that Cockrell does not challenge that the evidence shows that Vogg committed an overt act in providing a location for the delivery of cocaine. Thus, pursuant to I.C. 35–41–5–2, the State had to prove that Cockrell agreed to deal in cocaine with Vogg, the person alleged to have committed the overt act.[6] Cockrell claims that

5. Cockrell argues that the very wording of the information was confusing and that his conspiracy conviction should be overturned for this reason alone. However, Cockrell does not indicate in his brief, nor could we find in the record, where he objected to the charging information. "The proper method to challenge deficiencies in a charging information is to file a motion to dismiss the information, no later than twenty days before the omnibus date." *Miller v. State* (1994) Ind.App., 634 N.E.2d 57, 60; I.C. 35–34–1–4(b)(1). Generally, failure to challenge the charging information in such a manner results in waiver of the issue upon appeal. *Id.* Thus, we will not consider Cockrell's argument relating to the form of the charging information.

6. The State argues that, by proving that Cockrell and Dawson agreed to deal in cocaine, and that Dawson and Vogg agreed to deal cocaine, it has proven a "link" between Cockrell and Vogg sufficient to support Cockrell's

conviction. Brief of Appellee at 4. However, the statute defining conspiracy appears to specifically forbid such "link" conspiracies by requiring that either the defendant "or the person with whom he agreed performed an overt act in furtherance of the agreement." I.C. 35–41–5–2(b). Thus, proving that Cockrell agreed with Dawson, the confidential informant, or Officer Kimm is insufficient. The State had to prove that Cockrell agreed with Vogg, the person it alleged performed the overt act. This is due to the manner in which Cockrell was charged. Had the information alleged that Cockrell committed an overt act in furtherance of the conspiracy, the State would not have been required to prove that Cockrell agreed with Vogg to deal in cocaine. In fact, there was evidence that Cockrell agreed with Dawson to deal in cocaine, and that both Dawson and Cockrell committed various acts in furtherance of this agreement. However, the manner in which Cockrell was charged and the statutory language of I.C.

the trial court improperly admitted hearsay evidence at trial, and without this evidence, there was insufficient evidence indicating that he agreed with Vogg to deal in cocaine. Therefore, we must first determine whether the evidence at issue was properly admitted.

At trial, various witnesses testified concerning statements made by Vogg. Cockrell consistently objected to these statements, claiming they were inadmissible hearsay. Cockrell claims that the trial court erred in admitting these out-of-court statements. Decisions regarding the admissibility of evidence are within the trial court's sound discretion. *Clark v. State* (2000) Ind.App., 728 N.E.2d 880, 885, *trans. denied.* Upon appeal, we will not reverse the trial court's decision absent an abuse of that discretion. *Id.* " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801(c). Hearsay that does not fall within one of the exceptions to the hearsay rule is inadmissible. *Houser v. State* (1996) Ind.App., 661 N.E.2d 1213, 1219, *trans. denied;* Ind.Evidence Rule 802.

The State insists that the statements in question were not hearsay because "[a] statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Ind.Evidence Rule 801(d)(2)(E). For a statement to be admissible under this rule, the State must demonstrate both that a conspiracy existed between the declarant and the party against whom the statement is offered, and that the statement was made during the course of and in furtherance of the conspiracy. *Barber v. State* (1999) Ind., 715 N.E.2d 848, 852; *Wright v. State* (1997)

Ind., 690 N.E.2d 1098, 1105. There must be independent evidence of a conspiracy, i.e., evidence other than the statement itself. *Barber, supra* at 852. Our Supreme Court has emphasized that this independent evidence requirement is "a useful safeguard against abusive use of co-conspirator hearsay, and [the Court] will continue to apply it to evidence proposed for admission under Rule 801(d)(2)(E)." *Id.* (quoting *Lott v. State* (1997) Ind., 690 N.E.2d 204, 209). The existence of the conspiracy for purposes of Rule 801(d)(2)(E) may be demonstrated by direct or circumstantial evidence. *Houser, supra,* 661 N.E.2d at 1219; *Wright, supra,* 690 N.E.2d at 1105.

To prove a conspiracy, the State need not prove the existence of a formal express agreement. *Porter v. State* (1999) Ind., 715 N.E.2d 868, 870. "It is sufficient if the minds of the parties meet understandingly to bring about an intelligent and deliberate agreement to commit the offense." *Id.* at 871 (quoting *Williams v. State* (1980) 274 Ind. 94, 96, 409 N.E.2d 571, 573). However, relationship and association with the co-conspirator, standing alone, is insufficient to establish a conspiracy. *Porter, supra* at 871; *Robertson v. State* (1952) 231 Ind. 368, 376, 108 N.E.2d 711, 715.

Cockrell claims that the State failed to establish the existence of a conspiracy between Cockrell and Vogg, thereby rendering Vogg's statements inadmissible. Therefore, we must determine whether the independent evidence establishes, by a preponderance, the existence of a conspiracy between Cockrell and Vogg.

The evidence independent of the hearsay reveals that on each occasion, the police, either directly or through a confidential informant, gave Vogg money to purchase cocaine.[7] Vogg then summoned Dawson,

35–41–5–2 required the State to prove that Cockrell agreed with Vogg to deal in cocaine.

7. Although Cockrell was acquitted on Count II, relating to the events of February 3, 1998, such does not make the evidence as to what

who went to Cockrell's apartment building to meet with Cockrell and buy cocaine. Dawson then returned to Vogg and handed him the cocaine. Vogg then delivered the cocaine to the police or the confidential informant.

In addition to this evidence, the State asked Detective Brady how he became involved in the investigation against Cockrell. Brady replied that on February 3, 1998, "[the] confidential informant, he goes to Mr. Vogg's trailer, he gives Mr. Vogg's [sic] some money, Mr. Vogg's [sic] advises ..." Record at 254. At this point, Cockrell objected on the grounds that Brady's answer appeared to include hearsay. The prosecutor responded, "I think case laws [sic] clear that officers can refer to what other people told them with regards [sic] to why they conducted a certain investigation." Record at 254–55. The court overruled Cockrell's objection, and Brady testified that, "Mr. Vogg's [sic] advised the confidential informant that their [sic] going to Cockrell's to get the cocaine." Record at 255.

 The prosecutor's response to Cockrell's objection was an apparent reference to the rule that an out-of-court statement may be admissible to show the investigative steps that a police officer took. *Clark, supra,* 728 N.E.2d at 885. However, such testimony must be limited to describing the course of the police investigation, not to prove the truth of the matter asserted. *Id.* Thus, Brady's testimony concerning what Vogg said about Cockrell was offered not to prove the truth of what Vogg said, but instead was offered to demonstrate why the police decided to investigate Cockrell.[8]

The State cites *Brown v. State* (2000) Ind., 725 N.E.2d 823, 827, for the proposition that this statement is also evidence of a pre-arrangement between Cockrell and Vogg. In *Brown,* a co-conspirator and several of his friends were at the defendant's house when the co-conspirator received a page, stated, "Revco, let's go," and left the house with at least two other men. *Id.* The defendant, the co-conspirators, and several others later shot the victim in a parking lot near a Revco drugstore. When the defendant's girlfriend testified to the co-conspirator's statement at trial, the defendant claimed that the statement was improper hearsay. The Indiana Supreme Court held that the statement was not hearsay because it "was not used to prove the truth of the matter asserted—that [the victim] was at Revco or that [the co-conspirator] and his associates were headed there. Rather, the statement was used to show that there was prearrangement by [the defendant] and the other conspirators." *Id.*

However, when not used to prove the truth of the matter asserted, we fail to see how Vogg's statement demonstrates a pre-arrangement between him and Cockrell. In *Brown,* the co-conspirator, shortly after receiving the page, committed a crime with the defendant near a Revco drugstore. Therefore, it was reasonable to infer that the page was part of a plan to kill the victim. Here, after making this statement, Vogg was never seen with Cockrell. In fact, there was no evidence that Vogg was ever seen with Cockrell or that the two ever had any contact with each other. At most, Vogg's statement indicated that he believed cocaine could be purchased from Cockrell. It does not establish that Cockrell had agreed with Vogg to sell cocaine.

 We must now determine whether this establishes, by a preponderance of the evidence, the existence of a conspiracy between Vogg and Cockrell.[9] In *Houser,*

took place on this date invalid as to the conspiracy charge.

8. Upon appeal, Cockrell does not challenge the trial court's ruling on the admissibility of this testimony, but emphasizes that it could

not have been offered to prove the truth of the matter asserted.

9. The test is not beyond a reasonable doubt but rather is the preponderance test. *Wright, supra,* 690 N.E.2d at 1098. *See Wallace v.*

*supra,* 661 N.E.2d at 1219, this court held that there was circumstantial evidence of the existence of a conspiracy between the defendant, accused of fraud, and a co-conspirator, thereby permitting a witness to testify as to what the co-conspirator had said. In *Houser,* the witness testified that the co-conspirator had met with the defendant on several occasions and that she had directed phone calls from the co-conspirator to the defendant. There was also evidence that the defendant had directed others to issue false invoices and vendor checks to the co-conspirator during the same period.

In *Leslie v. State* (1996) Ind.App., 670 N.E.2d 898, 900, *trans. denied,* a witness testified that the co-conspirator was involved in selling cocaine and that the defendant and the co-conspirator frequently called each other. There was also evidence that the co-conspirator transferred thousands of dollars to the defendant, and that the defendant would fly to meet with the co-conspirator. After these meetings, the defendant would be in possession of cocaine. The *Leslie* court concluded that this evidence was sufficient to establish the existence of a conspiracy for the purpose of the admission of the co-conspirator's statements. *Id.*

In *Wright, supra,* 690 N.E.2d at 1106, the defendant told the police that he knew one of the co-conspirators had a gun and wanted to do "devious" things, that he drove the co-conspirators to Ball State University, that he was present when one of the co-conspirators showed the victim the gun and demanded money, that he waited while the co-conspirators shot the victim, and that he then drove them to a friend's house. The Indiana Supreme Court held that this was "ample evidence from which a court could conclude that there was a conspiracy" for purposes of admitting the co-conspirator's statements. *Id.*

Here, the independent evidence of a conspiracy was neither as clear nor as persuasive as that in *Houser, Leslie,* and *Wright.* Detective Brady's testimony did establish that Vogg thought cocaine could be bought from Cockrell. There was also evidence that on three separate occasions, Vogg sent Dawson to Cockrell to purchase cocaine. However, as noted above, there was no evidence that, during the timeframe of the charged conspiracy, Cockrell and Vogg ever met or even made contact with each other. On the contrary, Vogg always used Dawson to contact Cockrell. When viewed in conjunction with Dawson's uncontradicted testimony that he never mentioned Vogg to Cockrell or told him what he was doing with the cocaine, we hold that this is insufficient evidence to establish, by a preponderance, that Cockrell agreed with Vogg to sell cocaine.[10] As the crime was charged, without evidence that Cockrell agreed with Vogg, no conspiracy was established, and the trial court abused its discretion when it allowed Vogg's hearsay statements into evidence under Evid. R. 801(d)(2)(E).

▆▆▆▆ Having concluded that Vogg's hearsay statements were not admissible, we must now determine whether the other properly admitted evidence was sufficient to support Cockrell's conspiracy conviction. The Due Process Clause of the Fourteenth Amendment protects a defendant against conviction except upon proof beyond a reasonable doubt of every element necessary to constitute the crime with which he is charged. *Anderson v. State* (1997) Ind., 681 N.E.2d 703, 707 (citing *In re Winship* (1970), 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368). If after considering evi-

State (1981) Ind., 426 N.E.2d 34; *Bourjaily v. U.S.* (1987), 483 U.S. 171, 181 & 198, 107 S.Ct. 2775, 97 L.Ed.2d 144 (construing FED. R.EVID. 801(d)(2)(E) which is identical to that of Indiana).

10. In addition, Officer Kimm's testimony that Vogg told him, "if this goes well a couple more times we might be able to buy from Gary [Cockrell] direct," is further indication that Cockrell had no contact with Vogg. Record at 528.

dence supporting the verdict and reasonable inferences therefrom, we conclude that no reasonable trier of fact could find each element of the crime beyond a reasonable doubt, we may not affirm the conviction. *See id.* at 708.

▆▆▆ As mentioned previously, the evidence independent of Vogg's hearsay was insufficient to establish even by a preponderance of the evidence that Cockrell agreed with Vogg to deal in cocaine. Thus, we must also conclude that the evidence was insufficient to prove this beyond a reasonable doubt. Our conclusion is consistent with the decision in *Porter, supra,* 715 N.E.2d at 872, wherein the Indiana Supreme Court held that there was insufficient evidence to support an inference of an agreement between the defendant and an alleged co-conspirator. In *Porter,* there was no evidence that the defendant and the alleged co-conspirator were together at any time before, during, or after the crimes, no evidence that they arrived at or left the scene together, no evidence that they spoke, gestured, or communicated with each other before, during, or after the crimes, and no evidence that the two were even aware of each other's presence when the crimes occurred. Here, although the State did present evidence that Vogg knew of Cockrell and bought drugs via Dawson, there was a dearth of evidence regarding an agreement by Cockrell with Vogg. Although one might speculate that Cockrell was part of a scheme consisting of himself, Dawson, and Vogg, speculation is insufficient to support a conviction. *See Jaunese v. State* (1998) Ind.App., 701 N.E.2d 1282, 1284; *Sutton v. State* (1991) Ind.App., 571 N.E.2d 1299, 1304.

The State failed to present substantial evidence of probative value from which a reasonable trier of fact could have concluded that Cockrell agreed with Vogg to deal in cocaine. We therefore reverse and remand with instructions to vacate the conviction and sentence on Count I, conspiracy to deal in cocaine.

II

*Sufficiency of Evidence on Count III*

Next, Cockrell claims that there was insufficient evidence to support his conviction upon Count III, dealing in cocaine within one thousand feet of a school or public park on February 4, 1998. Upon appeal, Cockrell does not deny that the evidence showed that he delivered cocaine to Dawson on February 4, 1998. However, Cockrell claims that there was no evidence that this delivery took place within one thousand feet of a public park or school property. Detective Brady testified that on February 4, Dawson and Cockrell met at "the far south end" of the apartment building where Cockrell lived. Record at 257. Dawson testified that when he met Cockrell on February 4, he "parked down at the end of the building." Record at 463. Detective Brady testified upon cross-examination that the parking area south of the apartment building was not within one thousand feet of public park property. Also, the Hamilton County Surveyor testified that the parking area south of Cockrell's apartment was not within one thousand feet of Cool Creek Park.

The State, apparently conceding that the location where Cockrell sold the cocaine to Dawson was not within one thousand feet of a public park, argues that the delivery took place within one thousand feet of a school. The State maintains that Cockrell, who does not live within one thousand feet of a school, used Dawson to constructively transfer the cocaine to Vogg, who does live within one thousand feet of a school. Indiana Code 35–48–1–11 defines "delivery" as "[a]n actual or *constructive transfer* from one ... person to another of a controlled substance, whether or not there is an agency relationship." (Burns Code Ed. Repl.1998) (emphasis supplied).

In *Laird v. State* (1985) Ind., 483 N.E.2d 68, the defendant told his girlfriend to give a bag containing drugs to a third party. All three then sorted the drugs and repackaged some for future sales, and the

defendant received a percentage from the sale of those drugs. The *Laird* court found this evidence sufficient to find that there had been a constructive transfer of the drugs in question. *Id.* at 70. In *Radford v. State* (1984) Ind., 468 N.E.2d 219, cited by the *Laird* court, a police informant and the defendant discussed a possible drug sale. The parties agreed upon a price and the defendant took the money from the informant. This money was then given to a third party who gave the drugs to the informant. The *Radford* court held that this evidence was sufficient to support a conviction for dealing in narcotics. *Id.* at 221. Finally, in *United States v. Waller* (1974) 7th Cir., 503 F.2d 1014, 1015, *cert. denied* (1975), 420 U.S. 932, 95 S.Ct. 1137, 43 L.Ed.2d 406, also cited by *Laird, supra,* the defendant negotiated a drug transaction and caused her daughter to actually hand over the drugs to the buyer. The *Waller* court found that the defendant had adequate control over the drugs to cause them to be delivered, and held that there was a constructive transfer within the meaning of the federal statute.[11] *Id. See also State v. Campbell* (1990) Wash.App., 59 Wash.App. 61, 795 P.2d 750, 752; *York v. State* (1999) Miss.App., 751 So.2d 1194, 1197; *Roberts v. State* (1993) Tex.App., 866 S.W.2d 773, 778, (all defining constructive transfer as the transfer of a controlled substance, either belonging to or under the direct or indirect control of the defendant, by some other person or manner at the instance or direction of the defendant).

■ Unlike in *Laird, Radford,* and *Waller,* in this case there was no evidence that Cockrell knew that the cocaine would ultimately be delivered to Vogg, the confidential informant, or Officer Kimm. Nor was there any evidence that Dawson was transferring the cocaine to Vogg at the instance or direction of Cockrell. In fact, the evidence suggests quite the contrary. As discussed above, Dawson testified that

he never told Cockrell for whom he was purchasing the cocaine. Under these facts, the State did not establish a constructive transfer of the cocaine from Cockrell to Vogg. Without a constructive transfer to Vogg, the cocaine delivery did not occur within one thousand feet of a school. Thus, Cockrell's conviction for dealing cocaine within one thousand feet of a school is improper.

However, there was ample evidence showing that Cockrell delivered cocaine to Dawson. "A person who ... knowingly or intentionally ... delivers ... cocaine or a narcotic drug ... commits dealing in cocaine or a narcotic drug, a Class B felony." I.C. 35–48–4–1 (Burns Code Ed. Repl. 1998). For these reasons, we reverse Cockrell's conviction upon Count III as a Class A felony and remand with instructions to enter a judgment of conviction as a Class B felony and to resentence accordingly.

### III

### *Sufficiency of Evidence on Count IV*

■ Cockrell next contends that there was insufficient evidence to convict him upon Count IV, dealing cocaine with an aggregate weight of more than three grams. Cockrell claims that it was error for the trial court to have admitted into evidence, over his objection, the cocaine that he sold to Dawson on February 11, 1998. In particular, Cockrell contends that the State had not properly established a chain of custody over the cocaine, and that without the cocaine, there was insufficient evidence to support his conviction.

■ Under the chain of custody doctrine, an adequate foundation is laid when the continuous whereabouts of an exhibit is shown from the time it came into the possession of the police. *Bell v. State*

---

11. As noted by the *Laird* court, the federal statute defining delivery is very similar to its Indiana counterpart. 21 U.S.C. § 802(8) reads, "The terms 'deliver' or 'delivery' mean the actual, *constructive,* or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." (emphasis supplied).

(1993) Ind., 610 N.E.2d 229, 232–33. A proper foundation for introduction of physical evidence is laid if a witness is able to identify the item and the item is relevant to the disposition of the case. *Id.* at 233. The State may lay an adequate foundation by providing a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next. *Id.* If the State presents evidence which strongly suggests the exact whereabouts of the evidence at all times, that is sufficient. *Id.*

Dawson testified that, on February 11, Cockrell gave him "more [cocaine] than the last two times." Record at 475. Dawson said he then gave this cocaine to Vogg. Officer Kimm testified that Vogg then gave the cocaine to him. Officer Kimm later sealed the cocaine in a bag which was initialed and dated. On February 12, 1998, Roger Conn, a lab and evidence technician for the Carmel Police Department, retrieved the cocaine and transported it to the Indiana State Police laboratory for analysis. The cocaine remained in the custody of the Indiana State Police until March 26, 1998, when Conn retrieved the cocaine and returned it to the evidence locker at the Carmel Police Department. On May 14, 1999, Conn again took the cocaine to the Indiana State Police laboratory for further testing. On August 12, 1999, Conn retrieved the cocaine from the Indiana State Police and returned it to the evidence locker in Carmel, where it remained until trial.

The Indiana State Police conducted two analyses on the cocaine. The original chemist, James Forbes, reported the weight of the cocaine to be 5.4 grams. Forbes retired before trial and did not testify. The Indiana State Police then conducted another test performed by drug analyst Jonelle Shiel. Shiel's report listed the weight of the cocaine as being 4.41 grams. Shiel also changed the description of the exhibit from a rock-like substance to a rock-like substance and powder. Shiel testified that she used "[p]robably, a few tenths of a gram" while testing the cocaine. Record at 662.

Cockrell claims that because Forbes did not testify as to the whereabouts of the cocaine during the first chemical analysis, the chain of custody was broken. Cockrell also claims that the discrepancy in the reported weight of the cocaine demonstrates that the evidence was tampered with. We disagree.

First, the State demonstrated that the evidence was twice taken from the Carmel Police Department, to the Indiana State Police lab, and back to the Carmel Police Department. This provided a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next. The State need not establish a perfect chain of custody; any gaps in the chain of custody impact solely upon the weight of the evidence, not its admissibility. *Johnson v. State* (1992) Ind.App., 594 N.E.2d 817, 818. Furthermore, merely raising the possibility of tampering with the evidence is an insufficient challenge to chain of custody. *Id.* at 818.

Shiel testified that the evidence is usually weighed before testing. While Shiel testified that she likely used only a few tenths of a gram in testing, she also indicated she did not know how much Forbes used in testing, and that Forbes could have used more than she did during testing. The discrepancy merely demonstrated that Forbes, who performed the first test, used approximately 0.99 grams of the cocaine during testing.

The State adequately established a chain of custody over the cocaine sold by Cockrell on February 11, 1998, and the trial court did not abuse its discretion in admitting the cocaine into evidence. The lesser of the two reported weights, 4.41 grams, is still sufficient evidence to support Cockrell's conviction of dealing in cocaine with an aggregate weight of over three grams. Therefore, we affirm Cockrell's conviction upon Count IV.

*Conclusion*

In conclusion, we reverse the judgment of conviction upon Count I, conspiracy to deal in cocaine, and remand with instructions to vacate the conviction and the sentence thereon. We also reverse the conviction upon Count III as a Class A felony and remand with instructions to enter a judgment of conviction as a Class B felony. We affirm the conviction upon Count IV. The cause is remanded for resentencing in accordance with this opinion.[12]

SHARPNACK, C.J., and MATHIAS, J., concur.

12. As earlier stated, because we reverse Cockrell's conviction upon Count I, we do not address his argument that his convictions upon Counts I and III and Counts I and IV violate double jeopardy. Similarly, as we reverse Cockrell's conviction upon Count I and remand with instructions to enter judgment of conviction as a Class B felony with regard to Count III and remand for resentencing accordingly, we need not now consider Cockrell's argument that his sentence is manifestly unreasonable.