Jeffrey A. **VLIETSTRA,** Appellant–Defendant,

v.

**STATE of Indiana,** Appellee.

No. 46A04–0302–CR–54.

Court of Appeals of Indiana.

Dec. 30, 2003.

---

Peter L. Boyles, Martz & Boyles, Valparaiso, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Jeffrey A. Vlietstra was convicted of four counts of Receiving Stolen Property, a Class D felony.[1] Upon appeal, Vlietstra presents several issues for our review, which we restate as: (1) whether the trial court improperly admitted hearsay evidence; and (2) whether the evidence is sufficient to support Vlietstra's convictions.

We reverse.[2]

The record reveals that in the spring of 2001, Vlietstra told Richard Newenhouse that he had some John Deere tractors which he wished to sell. Mr. Newenhouse had previously purchased a Jeep from Vlietstra. Vlietstra eventually sold Mr. Newenhouse three John Deere tractors: a model number 425, which was sold for $2,000; a model number 445, which was also sold for $2,000; and a model number 4200, which was sold for $5,000. The tractors were delivered on three separate occasions. Mr. Newenhouse also received a front-end loader and a "brush hog" rotary mower from Vlietstra to attach to one of the tractors. Mr. Newenhouse sold one of the tractors, model number 425, to his

---

1. I.C. § 35–43–4–2(b) (Burns Code Ed. Repl. 1998).

2. Because of this result, we do not address the other issues Vlietstra presents upon appeal.

father-in-law for $2,000. Mr. Newenhouse attempted to "wip[e] out" the PIN number[3] on one of the tractors with a marker because he "figured there was something wrong with [the tractors]...." Transcript at 22.

On November 1, 2001, the police contacted Mrs. Newenhouse and accompanied her to the Newenhouses' home. One of the officers, Indiana State Police Detective Brian Olehy, received Mrs. Newenhouse's permission to check the tractors to determine if they had been stolen. Over Vlietstra's objections, Detective Olehy testified that he checked with the National Crime Information Center ("NCIC") and determined that the model number 445 tractor, the model number 4200, the front-end loader, and the mower had all been reported as stolen. Detective Olehy then confiscated the items so that they could be returned to their owners. The Newenhouses told the police that they had received the items from Vlietstra. The Newenhouses did not tell the police about the third tractor, model number 425, which had been sold to Mrs. Newenhouse's father. Nor did they speak of it when deposed by Vlietstra's trial counsel.

On November 21, 2001, the State charged Vlietstra with four counts of receiving stolen property. Count I pertained to the front-end loader; Count II pertained to the model 445 tractor; Count III pertained to the model 4200 tractor; and Count IV pertained to the mower. Approximately one week before trial, Captain Bernard Johnsen, Deputy Chief of the St. John Police Department, received a telephone call from Vlietstra, who was in jail at that time. Vlietstra informed Captain Johnsen of the tractor which Mr. Newenhouse had sold to his father-in-law. Vlietstra told Captain Johnsen that the tractor in question was a model 425 John Deere which had been taken from Klug Implement in Michigan. Vlietstra denied any involvement in the situation. A jury trial was held on September 17 and 18, 2002. The jury found Vlietstra guilty as charged, and on December 6, 2002, the trial court sentenced him to two years incarceration on each count, to run consecutively, for a total of eight years.[4]

■ Vlietstra claims that the trial court erred in admitting into evidence that portion of Detective Olehy's testimony wherein he referred to information he learned from the NCIC. At trial, Detective Olehy testified that he learned that the two tractors, the front-end loader, and the mower on the Newenhouses' property were stolen by running the items' information through the NCIC database. Vlietstra claims that the trial court erred in overruling his hearsay objections to this testimony. Decisions regarding the admissibility of evidence are within the trial court's sound discretion and will not be reversed absent an abuse of that discretion. *Cockrell v. State*, 743 N.E.2d 799, 804 (Ind.Ct.App. 2001). Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted. *Id.* (citing Ind. Evidence Rule 801(c)). Hearsay which does not fall within an exception to the hearsay rule is inadmissible. *Id.* (citing Ind. Evidence Rule 802).

In support of his claim that information received from the NCIC is hearsay, Vlietstra cites *Broecker v. State*, 161 Ind.App.

---

**3.** A PIN number is similar to a VIN number on an automobile.

**4.** Also on December 6, 2002, Vlietstra filed in open court a motion for judgment on the evidence, which the trial court treated as a motion to correct error. The trial court denied this motion on December 12, 2002.

206, 314 N.E.2d 428 (1974), and *Gibbs v. State*, 426 N.E.2d 1150 (Ind.Ct.App.1981). In *Broecker*, the defendant appealed his conviction for auto theft, claiming in part that testimony at his trial referring to information received from the NCIC was inadmissible hearsay. The *Broecker* court held that the defendant had failed to properly preserve the error for appeal. 161 Ind.App. at 208, 314 N.E.2d at 429. Nevertheless, the court addressed the merits of the defendant's claim and concluded that the evidence was not offered to prove the truth of the matter asserted. 161 Ind. App. at 209, 314 N.E.2d at 430. The court further held that even if the evidence had been erroneously admitted, it was harmless error. *Id.* Similarly, in *Gibbs*, the defendant claimed that the trial court erred in allowing a police officer to testify as to information he had garnered from the NCIC. The *Gibbs* court held that the officer's testimony was cumulative of other evidence and at most harmless error. 426 N.E.2d at 1157. Thus, neither of the cases cited by Vlietstra specifically holds that information from the NCIC is hearsay.

Be that as it may, we conclude that Detective Olehy's testimony regarding the information he received from the NCIC was, by definition, hearsay.[5] It was a statement [6] made out of court and offered to prove the fact that the property in question was stolen. The trial court thus erred in admitting such into evidence. At trial, the State made no attempt to establish that the NCIC information fit within one of the various exceptions to the hearsay rule. Upon appeal, the State makes no argument that the NCIC testimony was not hearsay or fit within any exception to the hearsay rule but argues solely that the admission of the NCIC information was at most harmless error.

■ Before we address the question of harmless error, we consider whether the evidence, absent Detective Olehy's improperly admitted testimony concerning information he learned from the NCIC, is insufficient to support Vlietstra's convictions for receiving stolen property. The statute defining this crime reads, "A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiving stolen property, a Class D felony." I.C. § 35–43–4–2(b).

---

**5.** Courts in other jurisdictions have likewise concluded that, whether or not NCIC information fits within any exception to the hearsay rule, such information is hearsay. *See, e.g., United States v. Davis*, 568 F.2d 514 (6th Cir.1978); *United States v. Johnson*, 413 F.2d 1396 (11th Cir.1969) (noting that NCIC information was double hearsay in that witness testified as to what he learned from NCIC and NCIC in turn gathered information from other police departments); *State v. Broussard*, 819 So.2d 1141 (La.Ct.App.2002); *Sanders v. State*, 786 So.2d 1078 (Miss.Ct.App.2001); *Dillingham v. Commonwealth*, 995 S.W.2d 377 (Ky.1999), *cert. denied* 528 U.S. 1166, 120 S.Ct. 1186, 145 L.Ed.2d 1092 (2000); *State v. Underwood*, 286 N.J.Super. 129, 668 A.2d 447 (1995); *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995) (approving trial court's refusal to admit NCIC printout where proponent failed to establish proper basis for admitting such under the business records exception), *cert. denied* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); *Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267 (1986) (NCIC printout admissible hearsay when it fit within business records exception to the hearsay rule); *State v. Buck*, 670 S.W.2d 600 (Tenn.1984) (stating that information in NCIC reports is pure hearsay of a dubious degree of accuracy, prepared for purposes other than court use, contains information that is likely to be prejudicial under all circumstances, and is not the best evidence of matters that can be proven by reliable, documentary evidence).

**6.** "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid. R. 801(a).

Thus, to convict Vlietstra, the State had to prove the property at issue in the present case was the subject of a theft.[7]

In response to Vlietstra's claim of insufficient evidence, the State points to several pieces of evidence introduced at trial: that Vlietstra sold the property to Mr. Newenhouse for less than fair retail value; that Mr. Newenhouse paid for the property in cash; that no paperwork was executed for the sale of the property; that Vlietstra delivered the two tractors at issue here on separate occasions; that Vlietstra told Mr. Newenhouse that he would deliver a mower deck for one tractor but instead delivered the rotary mower and front-end loader; that the tractors appeared relatively new and came with keys and operating manuals; that the police confiscated the property in question and "returned it to the original owners," Appellee's Brief at 17; and that Vlietstra told Captain Johnsen about the third tractor which Mr. Newenhouse had sold to his father-in-law.

We fail to see how some of the evidence cited by the State establishes that the property in question was stolen. That the tractors were delivered on separate occasions and that Vlietstra delivered attachments different from what was agreed to seem to us irrelevant to the issue of whether the property was stolen. Similarly, that the tractors were delivered with keys and operating manuals does not support an inference that they were stolen. The fact that Mr. Newenhouse paid in cash is a relatively benign fact, which neither supports nor refutes an inference that the property paid for was stolen. Although the State's argument on this point is not entirely clear, the fact that no "paperwork" was executed is similarly a neutral factor. The State does not suggest that one is required to execute any paperwork when selling a tractor and/or attachments thereto. Though, if stolen tractors were being sold, one would not expect the deal to be memorialized in writing. The fact that the tractors appeared relatively new and were sold for less than fair retail value might raise suspicion regarding the transaction. Yet this does not establish that the property was stolen.

As far as the evidence regarding the conversation between Vlietstra and Captain Johnsen, this too does not establish that the property was stolen.[8] Of all the items involved, the hearsay evidence would suggest that only two were reported stolen from the same county.[9] Moreover, the

---

7. In addition to these explicit elements of the crime, the State must also prove beyond a reasonable doubt that a defendant accused of receiving stolen property knew that the property had been the subject of theft. *Gibson v. State*, 643 N.E.2d 885, 887 (Ind.1994). The test of knowledge is not whether a reasonable person would have known that the property had been the subject of theft but whether, from the circumstances surrounding the possession, the defendant knew that it had been the subject of theft. *Id.* at 888. Here, Vlietstra does not claim that the State failed to prove that he knew that the property had been stolen. Instead, he argues that the State failed to prove that the property had in fact been stolen. Of course, for the State to prove that Vlietstra knew that the property was stolen, it must prove that the property was actually stolen.

8. Even considering the evidence of Vlietstra's conversation with Captain Johnsen, there is insufficient proof that the property in question was stolen. We therefore need not consider Johnsen's claim that the admission of Johnsen's testimony violated Indiana Evidence Rule 404(b).

9. According to the information Detective Olehy garnered from the NCIC, the model 445 tractor was reported stolen by the Lafayette Police Department, the model 4200 was reported stolen by the Berrien County Sheriff's Department in Michigan, the rotary mower was reported stolen by the Benton County Sheriff's Department, and the front-end load-

evidence which is claimed to establish the situs of the thefts for which Vlietstra was charged came from the NCIC. It too was inadmissible hearsay and cannot be used to support the convictions. Therefore, the fact that Vlietstra knew certain details concerning the theft of the tractor which was eventually sold to Mr. Newenhouse's father-in-law cannot be used in conjunction with inadmissible evidence to establish that the property was stolen.

A slightly more probative piece of evidence is Detective Olehy's testimony that he confiscated the items in question until they "could be turned over to the rightful owners." Transcript at 136. The fact that the property had "rightful" owners suggests that neither Vlietstra nor the Newenhouses were the rightful owners. However, Detective Olehy's knowledge of the "rightful" owners came from the NCIC, information which we have concluded was improperly admitted hearsay and which cannot be used to support the convictions.[10]

Considering the evidence most favorable to the verdict, and the reasonable inferences drawn therefrom, we conclude that, although there is a suspicion that the tractors and other items were stolen (a suspicion which could have been readily proven by calling the owners of the property to testify), the State failed to prove beyond a reasonable doubt that the property in question was stolen and that Vlietstra knew this. *See Cockrell,* 743 N.E.2d at 806–07 (speculation is insufficient to support convictions, and if after considering evidence supporting the verdict and reasonable inferences therefrom, we conclude that no reasonable trier of fact could find each element of the crime beyond a reasonable doubt, we may not affirm the conviction). Vlietstra's convictions for receiving stolen property must therefore be reversed. *See United States v. Davis,* 568 F.2d 514 (6th Cir.1978).

The judgment of the trial court is reversed and the cause is remanded with instructions to vacate the convictions and the sentences thereon.

RILEY, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I believe the evidence was sufficient to support the convictions for receiving stolen property and therefore respectfully dissent from the reversal of those convictions.

As a starting point, it seems likely to me that receiving stolen goods is an offense that is particularly likely in many cases to be sustainable only by circumstantial evidence. It is normally not difficult to prove that the items in question were stolen. Typically, the most difficult part of the State's task is proving that the defendant was aware the items were stolen. Rare indeed is the case in which the original thief testifies that he or she conveyed the stolen items to the defendant, while at the same time advising the defendant that they are stolen. Rarer still is the scenario

---

er was reported stolen by the Lebanon Police Department. According to the conversation between Vlietstra and Captain Johnsen, the model 425 tractor which was sold to Mr. Newenhouse's father-in-law was stolen from Eau Claire, Michigan, which is in Berrien County, Michigan. The latter tractor, however, was not the subject of a charge against Vlietstra.

10. Although not referred to by the State, we note that Mrs. Newenhouse testified that Detective Olehy told her that the items were "stolen." Transcript at 60. However, the record indicates that the police learned this information by "run[ing] the numbers" on the tractors, i.e. using the NCIC—information which we have determined to be hearsay. *Id.*

in which the defendant admits knowing the items were "hot." So, we are forced to infer the defendant's guilty knowledge by the surrounding circumstances. In the instant case, the majority concludes that the State failed to prove either element, i.e., that the items were stolen, and that Vlietstra knew it.

I believe the evidence was sufficient to prove that the equipment was stolen. Brian Olehy was the detective in charge of the investigation for the Indiana State Police. It appears that Detective Olehy was actively involved in the case from beginning to end. His investigation led to the discovery of the equipment in the Newenhouses' possession, and he was the law enforcement officer who contacted the Newenhouses and ultimately confiscated the stolen equipment. The prosecutor questioned Detective Olehy at trial about the fate of the confiscated equipment: "Eventually what did happen with those tractors?" *Transcript* at 137. Detective Olehy responded, "The tractors were returned to their rightful owners, or the benefit of the sale or use of those items [sic]." *Id.* It is clear from the record that the stolen equipment bore serial numbers that were used to identify them and trace them to the original owners. Regardless of whether the NCIS information was admissible in evidence, Detective Olehy's response permits a reasonable inference that the original owner of the equipment in question accepted the return of that property. It may be inferred that said acceptance was premised upon the owner's recognition and identification of those items as the owner's property, which in turn permits a reasonable inference that it was stolen from that person in the first place. Therefore, quite apart from all of the questions either directly or tangentially concerning the NCIS or information derived therefrom, the foregoing portion of Detective Olehy's testimony alone was sufficient to prove that the equipment was stolen.

I turn now to the sufficiency of the evidence concerning Vlietstra's knowledge that the equipment was stolen. The majority concludes that the information from NCIS indicating that the equipment sold by Vlietstra to Newenhouse was stolen was inadmissible hearsay. Even accepting that conclusion as true, I believe the remaining evidence was sufficient to support the convictions. The difference of opinion between my colleagues and me is attributable in large part to the way we review this evidence. As I read the majority's analysis, its approach is to consider each item of circumstantial evidence in isolation, determine its probative value in tending to prove the requisite element (i.e., that the item was stolen, or Vlietstra's knowledge thereof), accept or reject that item of circumstantial evidence as sufficient proof, and then move to the next item. I believe that approach is flawed.

I might agree that the mere fact that Vlietstra sold the equipment to Newenhouse for less than market value despite the fact that the items appeared to be relatively new does not necessarily, by itself, prove that the equipment was stolen or that Vlietstra knew it was. The same can be said of the mere facts that Vlietstra sold the equipment for cash and that no paperwork was completed on the transaction—they do not necessarily by themselves prove that the equipment was stolen or that Vlietstra knew it was. Similarly, the mere facts that Vlietstra, a private individual who claimed to be selling his own personal property, did not deliver all of the attachments that went with one of the tractors at the same time he delivered the tractor, and then later delivered different attachments than he originally promised, do not necessarily by themselves

prove that the equipment was stolen or that Vlietstra knew it was.

Viewed in isolation from one another, it is perhaps fair to say that none of the aforementioned facts constitute compelling evidence of Vlietstra's knowledge that the items were stolen. Viewed in their totality, however, they present a mosaic of guilty knowledge sufficient to sustain the State's burden on that element. Finally, it is not insignificant to me that the entire course of dealing with Vlietstra was of such a character as to arouse Richard Newenhouse's suspicions about the validity of Vlietstra's claim of ownership of the equipment. The transaction was so suggestive of stolen property, in fact, that Newenhouse attempted to alter the serial number on one of the tractors because he "figured there was something wrong[.]" *Transcript* at 22.

Circumstantial evidence need not overcome every reasonable hypothesis of innocence in order to be deemed sufficient to support a conviction. *Hawkins v. State,* 794 N.E.2d 1158 (Ind.Ct.App.2003). Rather, it is sufficient if an inference may reasonably be drawn from it to support the conviction. *Franklin v. State,* 715 N.E.2d 1237 (Ind.1999). As I view the totality of the foregoing evidence, I can draw the same reasonable inference that motivated Richard Newenhouse to alter the serial number of one of the tractors after purchasing it, viz., Vlietstra knew that items he was selling to Newenhouse were stolen. I would affirm the convictions.