**UNITED STATES v. McNAUGH et al.**
**No. 402.**

Circuit Court of Appeals, Second Circuit.
June 30, 1930.

Edward J. Reilly, of Brooklyn, N. Y., for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by this appeal is the sufficiency of the proof to support the charge that Mae McNaugh conspired with the other defendants to represent that they were federal officers or employees for the purpose of defrauding one Capineri.

The defendants Lagana and Caldrino, on October 24, 1929, came to the room of Capineri, who was an alien subject to deportation, showed him a badge, arrested him on the ground that he was in the country unlawfully and told him, in substance, that they were going to take him to Ellis Island. Lagana said to him that Caldrino was the "chief," and that, if $1,000 was paid to him, Capineri would be let alone. At the same time he exhibited a paper which purported to be a warrant of arrest. Capineri was taken down to the Battery in an automobile by Lagana and Caldrino, and upon promising to pay them $500 the next day, was released.

"John" McNaugh, a member of the New York Fire Department, and Mae McNaugh, in the summer of the same year, called on Capineri and suggested that Mae McNaugh, who had "lots of pull," would help him to become naturalized. She said if he would pay $1,500, of which $1,000 was to go to various public officials, he could be naturalized. She told him that she worked in a court in Jamaica, Long Island, in connection with immigration. On October 25, 1929, they again called on Capineri and asked him if he had made up his mind about what they had previously discussed. He told them of his arrest by Lagana and Caldrino the day before and of his agreement to pay them $500. Mae McNaugh thereupon said, "If you don't pay these people you will go to jail." At the same interview "John" McNaugh offered to help Capineri to sell some stock which he had in order to raise money.

Some time before any of these events Capineri had attended a night school which was conducted by the defendant Elizabeth McNaugh (as to whom the action was severed) for the purpose of teaching English to aliens, and had disclosed to her that he was unlawfully in the country. Elizabeth McNaugh was John McNaugh's sister, and the information that Capineri was illegally in the country appears to have been originally derived from her conversations with him at the night school. The court finally dismissed the indictment as to Elizabeth and John McNaugh in spite of the fact that the action had already been severed as to her.

Capineri notified the immigration authorities that Lagana and Caldrino were to receive $500 from him on October 25th, and they went to the place where the money was to be paid and made the arrest which preceded the indictment in this case. On this occasion, and shortly before the arrest, Mae McNaugh and "John" McNaugh were sitting in an automobile around the corner from the store where Capineri worked, and were talking with Lagana and Caldrino.

The foregoing evidence was plainly sufficient to enable the jury to find a prearranged plan in which Mae McNaugh co-operated with Lagana and Caldrino in a conspiracy that these men should represent themselves to be immigration officials or employees for the purpose of extorting money from Capineri and two of the overt acts alleged in the

indictment were sufficiently proved. The difficulty arises from lack of proof that Lagana and Caldrino were not in fact such employees. The conspiracy alleged was to violate section 32 of the Criminal Code (18 USCA § 76), which was *falsely to pretend* to be such employees with intent to defraud. It may well have been the fact that Lagana and Caldrino were ordinary blackmailers having no connection with the Department of Labor, but we have carefully scrutinized the record in vain to find any evidence of this. Thus it appears that a vital allegation of the indictment was not proved—vital because the false pretense of being United States officers or employees is the gist of the statutory crime for the perpetration of which the conspiracy is alleged to have been formed.

The sufficiency of the proof was attacked by a motion made at the close of the case to direct a verdict for the defendants on the ground that no conspiracy was proved. The only conspiracy upon which a conviction could be had under the indictment was that Lagana and Caldrino should falsely represent that they were federal officers with intent to defraud and there was no proof that their representations that they were federal officers were false. It has properly been held that a motion to direct a verdict must specify the grounds and that a mere general motion to direct because the evidence justifies no recovery under the pleadings is insufficient. Sterrett v. Bank, 122 N. Y. 659, 25 N. E. 913; Gerding v. Haskin, 141 N. Y. 514, 36 N. E. 601; Bickford v. Travelers' Ins. Co., 67 Vt. 418, 32 A. 230. But here there was a motion to direct a verdict because no conspiracy was proved, which of course meant no such conspiracy as the one alleged, viz. falsely to represent that Lagana and Caldrino were federal officers with intent to defraud. It was somewhat more specific than one directed to mere general failure of proof, for there were other matters, such as proof of the overt acts alleged which were covered by special objections. But, even if it be thought that the motion was not sufficiently precise, the lack of proof that Lagana and Caldrino falsely represented themselves to be federal officers was specifically raised by a request to charge that there was no proof "that these defendants or any of them were not Federal officials," which the court refused to grant. It may be said that Mae McNaugh nowhere represented that she was acting as a federal officer, so that the broad request could not literally have been given. But it at least sharply called the attention of the court to a vital defect in the proof, and required the judge to cover so important a matter by some appropriate instruction.

In spite of our disinclination to disturb a verdict in a case where there would seem to be an improbability that the indictment would ever have been found for a conspiracy to violate section 32 of the Criminal Code (18 USCA § 76) if Lagana and Caldrino had in fact been federal officials, we feel bound to reverse where the failure of proof was complete and related to such a vital matter.

Judgment of conviction reversed.