Joshua ROGERS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0007–CR–278.

Court of Appeals of Indiana.

Dec. 28, 2000.

---

William F. Thoms, Jr., Indianapolis, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

Joshua Rogers appeals his conviction after a jury trial of impersonating a public servant, a Class A misdemeanor.[1] He raises one issue for our consideration on appeal, which we restate as whether his conviction was supported by sufficient evidence. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 10, 1997, two young couples were in a hotel room in Indianapolis. One couple discovered that the other female, N.L., was an underage runaway, and they decided to notify police of her whereabouts. J.W., the first female, spoke with Joshua Rogers, a security guard at the hotel, and explained their dilemma. Rogers indicated to J.W. that he was a police officer; Rogers then came to the hotel

room, announced himself as a police officer, asked the four occupants for identification, and took them to a conference room. Rogers informed J.W. that he would perform a cavity search on her and if she did not follow his instructions, she and her boyfriend would be arrested. Rogers then took J.W. alone to a bathroom and instructed her to remove her pants and underwear, which she did. Rogers touched J.W. on her buttocks and pubic area, then inserted his finger into her vagina. Rogers then gave the two couples instructions and left. Rogers was arrested after J.W. notified police what had happened.

## STANDARD OF REVIEW

In reviewing whether the evidence presented at trial was sufficient to convict, we will affirm a conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Kimp v. State*, 546 N.E.2d 1193, 1196 (Ind. 1989). When a conviction is based on circumstantial evidence, we will not disturb the verdict if the jury could reasonably infer that the defendant is guilty beyond a reasonable doubt from the evidence presented. *Moore v. State*, 652 N.E.2d 53, 55 (Ind.1995). The circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Mills v. State*, 512 N.E.2d 846, 848 (Ind. 1987).

## DISCUSSION AND DECISION

Indiana Code § 35–44–2–3 provides as follows:

A person who falsely represents that the person is a public servant, with intent to mislead and induce another person to

1. Ind.Code § 35–44–2–3.

submit to false official authority or otherwise to act to the other person's detriment in reliance on the false representation, commits impersonation of a public servant, a Class A misdemeanor. However, a person who falsely represents that the person is: (1) a law enforcement officer; or (2) an agent or employee of the department of state revenue, and collects any property from another person; commits a Class D felony.

Rogers alleges the State did not present sufficient evidence to show he was not actually a police officer or did not have police powers as a security officer. In other words, he argues the State did not satisfy its burden of proving Rogers "falsely" represented himself to be a police officer—a public servant.[2] We disagree.

We find there was sufficient evidence to show Rogers did not have actual authority to perform the acts he performed under color of police authority. First, Officer Newlon of the Indianapolis Airport Police Department identified Rogers in court not as a fellow law enforcement officer but as "a security officer ... I had dealt with him before." (R. at 488.) Next, more telling evidence regarding Rogers' lack of actual authority is J.W.'s testimony about Rogers' unprofessional behavior. Most standard police procedures are within the knowledge of the ordinary juror; therefore, members of the jury could have reasonably inferred that if Rogers were a real law enforcement officer, he would have followed real law enforcement procedures.

J.W. testified that Rogers borrowed her cell phone to call the runaway girl's mother instead of notifying other police via an official police radio. (R. at 310.) J.W. testified Rogers performed a "strip search" and a "body cavity search" on her in a closed bathroom without witnesses and without probable cause. Furthermore, she testified he did not wear gloves

during the "body cavity search." Nor did he honor J.W.'s request for a female officer to perform the invasive search. (R. at 315–318.) The ordinary juror could reasonably infer that no official police search would be conducted in such a manner and that therefore Rogers was not a law enforcement officer.

Rogers cites a number of cases in support of his argument. First, he notes *People v. Johnson,* 27 Ill.App.3d 541, 327 N.E.2d 424 (1975), where the Illinois Court of Appeals reversed a conviction of a security guard for a concealed weapons violation. The court found he had authority to carry the weapon because he was working in his capacity as a security guard at the time of the violation, and the applicable statute contained an exception allowing security guards to carry weapons when working. We are not persuaded in the instant case to find a similar exception, as Rogers' status as a security guard did not confer upon him authority to perform the acts he did.

Rogers then cites an older federal case in which the court reversed the defendants' convictions of pretending, for purposes of extortion, to be federal officials. In *United States v. McNaugh,* 42 F.2d 835 (2d Cir.1930), there was no evidence in the record that the defendants were not actually immigration officials. We distinguish that case from the instant case because Rogers' own behavior serves as evidence of his lack of law enforcement authority. Rogers' inappropriate "searches" combined with Officer Newlon's testimony that he recognized Rogers as a security guard provided the jury with sufficient evidence to find Rogers did not have actual law enforcement authority to "search" J.W.

█ Rogers next cites two cases as authority for the proposition that a private security guard can have law enforcement powers; he suggests we view those cases

---

2. Rogers does not raise any issues on appeal regarding the sufficiency of the evidence under the remaining portions of the statute requiring proof of his intent and specific acts;

therefore, in this opinion we consider only whether the evidence was sufficient to show he was not a police officer.

as analogous to the instant case. In *Tapp v. State*, 406 N.E.2d 296 (Ind.Ct.App.1980), the victim of Tapp's battery was an off-duty police officer working as a security guard; Tapp argued against the enhancement of her offense due to the victim's status as an officer. This Court found that the officer in *Tapp* exercised his police powers while working for the security company; thus, he had law enforcement authority because he actually was a law enforcement officer, and the enhanced conviction was affirmed. Similarly, in *Robey v. State*, 484 N.E.2d 628 (Ind.Ct.App.1985), the defendant had been appointed as a special deputy by the Sheriff's office; therefore, he did have actual law enforcement powers in addition to his work as a private security guard. We agree with Rogers that it is possible for a private security guard to also have law enforcement powers. However, merely working as a private security guard does not vest that person with the auspices of being a public servant and a law enforcement officer. We find that Rogers' reprehensible conduct is not analogous to the situations presented in *Tapp* and *Robey*.

We will not disturb the jury's verdict, as we find the jury could reasonably infer from the evidence presented at trial that Rogers was not a public servant.

Affirmed.

ROBB, J., and MATHIAS, J., concur.