Jonathan W. LANDER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–0005–CR–297.

Supreme Court of Indiana.

Feb. 15, 2002.

Eric Koselke, Indianapolis, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Janet Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant was convicted and sentenced for murder and conspiracy to commit robbery. We affirm his convictions, finding probable cause and consent justify his warrantless arrest in his home, hearsay statements admitted at trial were harmless error, and his claim of double jeopardy unsupported. We find the aggravating and mitigating circumstances here warrant maximum concurrent sentences.

### Background

On February 18, 1999, Darrell Robinson and Adam Borton concocted a plan to rob Michael Strait as revenge for Strait's having been too friendly with Borton's girlfriend and soon-to-be mother of Borton's child. While at Borton's house, Strait had been seen with a wad of money and had been talking about a wave-runner that he had just bought. Robinson called Defendant and James Walker for help with the robbery. Borton was to ask Strait to drive him to James Walker's house at the Westbury Apartment complex on the pretext of picking up audio tapes from Walker. That night, Robinson drove Defendant and Walker (who had been at his girlfriend's house) to the Westbury Apartment complex.

Once there, Walker and Defendant got out of Robinson's car. Borton and Strait had arrived a little earlier, where Borton was supposedly waiting for Walker to bring out the audio tapes Borton was to pick up. Defendant loaded his gun, walked over to Strait's car, and entered the car from the passenger side door. He told Strait to drive to the bridge, the pre-arranged place at the complex where the robbery was to occur. Strait drove to the bridge. A few minutes went by, and then Walker got into the car. No money was found in the car. Robinson had Strait open his trunk to look for the money there. But there was nothing in the trunk. At that point, Robinson called off the robbery. Strait was later shot. As will be seen below, there is disagreement over how Strait was shot. Strait later died from his wounds.

Walker, Robinson, and Defendant fled the scene. Borton stayed behind and spoke with police officers as an eyewitness, not as an involved party. Robinson and Defendant were arrested in their homes and brought to the Marion County Jail. The gun used in the robbery was recovered from Defendant's home. Defendant was charged with the murder of Michael Strait and several other offenses. After a two-day jury trial, Defendant was convicted and sentenced for murder [1] and conspir-

---

1. Ind.Code § 35–42–1–1 (1998).

acy to commit robbery, a class B felony.[2]

We will recite additional facts as necessary.

### Discussion

### I

■ Defendant contends that he was illegally arrested in his parents' home in the middle of the night. He argues that the seizure of the weapon found during the arrest and his subsequent statements to the police should have been suppressed.[3] Defendant further argues that since the trial court denied his motion to suppress, his convictions should be reversed.

■ The Fourth Amendment of the United States Constitution protects persons from unreasonable searches and seizures.[4] The Fourth Amendment has been made applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 650, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Under Fourth Amendment doctrine, a threshold question is whether the defendant who claims a violation had a reasonable expectation of privacy at the time of the alleged unreasonable search and seizure. *Peterson v. State,* 674 N.E.2d 528, 532 (Ind.1996), *cert. denied,* 522 U.S. 1078, 118 S.Ct. 858, 139 L.Ed.2d 757 (1998) (citing *Livingston v. State,* 542 N.E.2d 192, 194 (Ind.1989)). In such matters, the defendant has the initial burden of establishing that he had a reasonable expectation of privacy. *Id.* This issue is not addressed by Defendant, and only summarily addressed by the State.[5] For purposes of analysis, we assume Defendant had a reasonable expectation of privacy.

■ A warrantless search and seizure of a residence is presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Under such circumstances, the State bears the burden of proving that an exception to the warrant requirement of the Fourth Amendment was present at the time of the search and seizure. *Krise v. State,* 746 N.E.2d 957, 961 (Ind.2001) (citing *Berry v. State,* 704 N.E.2d 462, 465 (Ind.1998)). We have held that probable cause together with valid consent to be inside the defendant's home constitutes an exception to the arrest warrant requirement.[6] *Phillips v. State,* 492 N.E.2d 10, 18 (Ind.1986), *overruled on other grounds by Moore v. State,* 498 N.E.2d 1, 10 (Ind.1986). "Whether a consent to entry is voluntary is therefore a question of fact to be determined from the totality of the circumstances." *Id.* (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

The police officers visited the Lander residence at 3:00 A.M. on February 19, 1999, on the basis of information provided by Borton and Robinson. Before visiting the Lander residence, the officers did not pause to obtain a warrant. Detective Turner explained, "As the investigation's ongoing, it's typical procedure if you're re-

---

2. Ind.Code § 35–41–5–2, § 35–42–5–1 (1998).

3. Defendant does not claim any violation under the Indiana Constitution, and has waived such a claim. His contention will be analyzed under federal Fourth Amendment case law only.

4. The Fourth Amendment provides, in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...."

5. Appellee's Br. at 7.

6. The United States Supreme Court left this as an unanswered question in *Payton v. New York,* but several jurisdictions, including Indiana, have found that this is a valid exception to the warrant requirement for arrests in a home. *See United States v. Xiong,* 60 F.Supp.2d 903, 907 (E.D.Wis.1999); *O'Meara by O'Meara v. City of Chicago,* 1999 WL 1046409, *6, 1999 U.S. Dist. LEXIS 18063, *16 (N.D.Ill.1999).

ceiving information rapidly that you follow-up on the information that you're given."

A gentleman dressed in pajamas answered the door in response to the officers' knock. After identifying themselves, the officers told the gentleman that they were looking for Jonathan Lander Jr. The gentleman identified himself as Defendant's father, Jonathan Lander Sr., and invited the officers into the foyer of the house. Although the main purpose of the officers' visit was to arrest Defendant, the officers did not inform Lander Sr. of this before being invited into the house. Once the officers were inside the foyer, Lander Sr. turned to his immediate right and opened a door that led to a den/office area. Over Lander Sr.'s shoulder, the officers could see Defendant in the room. After verifying Defendant's identity, the officers went into the room "for obvious officer safety reasons," and immediately handcuffed Defendant. At this point, Lander Sr. was taken aside by Major Turk who told Lander Sr. that the officers needed to talk with Defendant. Major Turk also asked Lander Sr. to sign a written consent form to search the residence.

Here, the State has the burden to prove that, at the time of the arrest, the officers had both probable cause to arrest Defendant and Lander Sr.'s consent was valid. *See Phillips*, 492 N.E.2d at 18. Although the State merely points to Detective Turner's affidavit for proof of probable cause, which was obtained after the arrest, the record does support a conclusion that probable cause existed at the time of Defendant's arrest.

■ "Probable cause exists when, at the time of arrest, the arresting officer has knowledge of facts and circumstances which would warrant a person of reasonable caution to believe that the defendant committed the criminal act in question." *Snellgrove v. State*, 569 N.E.2d 337, 341

(Ind.1991). The first officer to arrive at the crime scene, Sergeant Boydston, spoke with Borton who gave Sgt. Boydston the description of three individuals he claimed to be involved in the shooting of Strait, including Robinson and Defendant. Borton did not inform Sgt. Boydston that he had also been involved in the shooting. Based on Borton's information, Sgt. Boydston, Detective Turner, and two other officers first apprehended Robinson, and then Defendant. Robinson pointed out Defendant's house, and a check on the vehicle matching Borton's description showed that it was registered to both Jonathan Lander Sr. and Jr. Based on the "eye witness" and co-conspirator statements, the officers had probable cause to believe that Defendant was involved in the shooting.

■ We turn now to the more critical inquiry of Lander Sr.'s consent to the officers to enter his home. The State's Brief Opposing Defendant's Motion to Suppress cites to Lander Sr.'s testimony at the suppression hearing which indicates that he gave valid and voluntary consent to the officers to enter his home. Although the time was 3:00 in the morning, Lander Sr. was "awake enough" to remember the events. The officers were courteous and did not have their guns drawn when they asked to speak with Defendant. Lander Sr. testified, looking back at the incident with hindsight, that he would not have made any changes to what he did that night. There is no evidence that the officers used coercion or threats to force themselves into Defendant's home. And the officers waited in the foyer of the home until they happened to see Defendant in the den, the door to which Lander Sr. himself had opened.

We hold that Defendant's warrantless arrest in his home was proper because the police officers conducting the arrest had

both probable cause and valid consent to be inside Defendant's home.[7]

## II

■ Defendant contends that the trial court committed reversible error by allowing co-conspirator James Walker to testify about hearsay statements that were not related to the conspiracy.

■ Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). A co-conspirator's statement is not hearsay, if the statement is one "by a co-conspirator of a party during the course and in furtherance of the conspiracy." Evid. Rule 801(d)(2)(E). We also require that the State prove that there is "independent evidence" of the conspiracy before the statements will be admissible as non-hearsay under Rule 801(d)(2)(E). *Lott v. State,* 690 N.E.2d 204, 209 (Ind.1997). This means that the State must show that (1) existence of a conspiracy between the declarant and the party against whom the statement is offered and (2) the statement was made in the course and in furtherance of this conspiracy. *Barber v. State,* 715 N.E.2d 848, 852 (Ind.1999) (citing *Wright v. State,* 690 N.E.2d 1098, 1105 (Ind.1997)).

Defendant contends that two lines of questioning by the State of Walker were inappropriately allowed by the trial court. The first line of questioning was Walker's conversation with Robinson about their plan to rob Strait and the second line was Walker's conversation with his girlfriend telling her about the plan. Defendant argues that the State failed to lay a foundation of independent evidence of the conspiracy, aside from the statements made from Robinson to Walker. We agree with Defendant.

Before using co-conspirator Walker's statement, or Walker's account of his own out-of-court statement to his girlfriend, the State was required to establish, through first hand evidence, that a conspiracy between Walker, Robinson, Defendant, and Borton existed. *See Lott,* 690 N.E.2d at 209. Instead, the State merely established that Walker had been friends with Robinson, Defendant, and Borton, and that the victim was known to have some money with him. This was not first hand evidence of the conspiracy. The State did not offer any independent evidence of a conspiracy prior to its eliciting hearsay testimony from Walker. The State also failed to link Defendant in with the conspiracy as required by Rule 801(d)(2)(E). *Barber,* 715 N.E.2d at 852. Since the State failed to meet the requirements of Rule 801(d)(2)(E) with respect to Walker's testimony about his conversations with Robinson and his girlfriend under the co-conspirator non-hearsay definition (or any exception to the hearsay rule), these statements should have been ruled inadmissible as hearsay.

■ However, we will not overturn Defendant's conviction if this erroneous ruling is harmless. Ind. Trial Rule 61. Harmless error is defined as an error that does not "affect the substantial rights of a party." *Fleener v. State,* 656 N.E.2d 1140, 1141 (Ind.1995). Walker's admission that he told his girlfriend of the plan, though hearsay if offered to prove there was such a plan, did not deprive Defendant of any substantial rights because he fairly clearly implied there was an agreement to rob the victim. Later evidence confirmed this. In addition, the jury had before it significant

---

7. Because we hold that Defendant's arrest was legal, we need not and do not address Defendant's contention that the murder weapon and his confession should have been suppressed as "fruit of the poisonous tree."

evidence with which it could properly find Defendant guilty, aside from Walker's testimony about his conversations with Robinson and his girlfriend. The gun that was found at Defendant's home matched the spent casings of the bullets shot at the crime scene. The victim was shown to have died from a gunshot wound to his abdomen. In addition, in evidence were statements admitting guilt given by Defendant to police on the morning of his arrest—both a handwritten statement and an audio taped statement. With all this evidence in front of the jury, we cannot conclude that Defendant's substantial rights were violated. We find that the improper admission of the hearsay statements was harmless error.

### III

 Defendant contends that his convictions for murder and conspiracy to commit robbery violate the Double Jeopardy Clause of the Indiana Constitution.[8] He argues that there is a reasonable possibility that the jury used the evidence of the Defendant's "taking a loaded handgun to the scene of the crime and/or shooting Michael Strait as part of a plan" in establishing both the offense of murder and conspiracy to commit robbery.

 To establish that two challenged offenses constitute the same offense under the actual evidence test and thus violate the Indiana Double Jeopardy Clause, the defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999).

The essential elements of the offense of murder are: (1) the defendant (2) knowingly (3) killed (4) another human being. Ind.Code § 35–42–1–1 (1998). The essential elements of the offense of conspiracy to commit robbery are: (1) the defendant (2) agreed with one or more other persons to commit the crime of robbery (3) with the intent to commit robbery and (4) the defendant or one of the persons to the agreement performed an overt act in furtherance of the agreement. Ind.Code § 35–41–5–2 (1998).

While Defendant asserts that there is a reasonable possibility that the jury used the evidence of the Defendant's "taking a loaded handgun to the scene of the crime and/or shooting Michael Strait as part of a plan" in establishing both the offense of murder and conspiracy to commit robbery, he gives no explanation as to why this is so. While there was evidence of Defendant's taking a loaded handgun to the scene, that evidence does not appear to us to establish essential elements of either offense and Defendant does not explain to us how it does. And while the evidence of his shooting Strait does establish essential elements of the murder offense, that evidence does not appear to us to establish essential elements of the conspiracy offense and Defendant does not explain to us how it does.

We hold that Defendant has not made out a double jeopardy violation.

### IV

Defendant contends that consecutive sentences here are manifestly unreasonable in light of Defendant's youthful age and lack of prior criminal convictions.

 In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limit-

---

8. Indiana Constitution art. I, § 14.

ed discretion to enhance sentence to reflect aggravating circumstances or reduce it to reflect mitigating circumstances. The legislature also permits sentences to be imposed consecutively if aggravating circumstances warrant. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996) (citing *Reaves v. State,* 586 N.E.2d 847 (1992)). *See* Ind.Code § 35–38–1–7.1(b) (1998) (a court may consider aggravating circumstances in determining whether to impose consecutive sentences).

 When the trial court imposes a sentence other than the presumptive sentence, or imposes consecutive sentences where not required to do so by statute, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State,* 689 N.E.2d 678, 683 (Ind. 1997) (citing *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986)). The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific facts and reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1086 (Ind. 1996)).

At the sentencing hearing, the court identified four aggravating circumstances: (1) Defendant attempted to escape while incarcerated at the Marion County Jail; (2) Defendant had five incident reports at the jail since his arrest; (3) Defendant failed to cooperate with the probation officer in the preparation of the Presentence Report; (4) the circumstances of the crime, to wit, that there was no need to kill the victim during the robbery. The court identified two mitigating circumstances, that is, the Defendant's age at the time of the crime and his lack of prior felonies. The trial court sentenced Defendant to sixty-five (65) years for the murder, and twenty (20) years for conspiracy to commit robbery, to be served consecutively for a total of eighty-five (85) years.

Defendant contends that the court gave undue weight to the victim impact evidence at the sentencing hearing. Examining the record, it appears that the trial court gave some weight to both the victim impact evidence, as well as to the evidence of Defendant's background. The court also gave substantial weight to the nature of the crime itself based on the evidence at trial and not from the impact statements. We conclude that the victim impact evidence was not given undue weight.

 Before the trial court can impose a consecutive sentence, the trial court must articulate, explain, and evaluate the aggravating circumstances that support the sentence. *Sanquenetti v. State,* 727 N.E.2d 437, 442 (Ind.2000) (citing *Mitchem,* 685 N.E.2d at 678, and Ind.Code § 25–50–1–2) (Dickson, J.). That was not done here where the imposition of consecutive sentences was supported by a single statement that the "cold-blooded nature of the offense and the aggravating circumstances cited clearly warrant consecutive sentences." (R. at 763.) *See id.* (holding that the trial court's identification of the crime being a "crime[ ] of violence" fell short of the requirement that the trial court identify, explain and evaluate the aggravating circumstances).

Because we find that the trial court improperly sentenced a defendant, we elect to exercise our power to review and revise the sentence. *Id.* at 443; Ind. Const., art. VII, § 4. Although the nature and circumstances of a crime may be considered an aggravating factor, *Scheckel v. State,*

620 N.E.2d 681, 684 (Ind.1993), we do not find that the nature of Defendant's crime to warrant a consecutive sentence. Defendant was part of a botched robbery, after which he shot the victim in the arm. Defendant was also twenty years old and had never had a prior felony record. While we find the aggravating circumstances outweigh the mitigating circumstances to a sufficient degree to warrant imposing the maximum sentence for murder, we find sufficient mitigation to dictate concurrent sentences.

### Conclusion

We affirm the judgment of the trial court, except that Defendant is ordered to serve his sixty-five year sentence for the murder and twenty year sentence for conspiracy to commit robbery concurrently.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.