**Jeremy L. VENNARD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 42A01–0305–CR–193.

Court of Appeals of Indiana.

Feb. 18, 2004.

Transfer Denied April 22, 2004.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Jeremy L. Vennard appeals his conviction for Robbery,[1] a class A felony, claiming insufficiency of the evidence because the State failed to show that Vennard took any money from the victim. Vennard further contends that his conviction and sentence for robbery must be vacated in light of double jeopardy principles because that conviction was "based upon the same serious bodily injury that was the basis for his conviction for the murder of [the victim]." Appellant's Br. p. 2. Finally, Vennard alleges that the aggregate sentence of 130 years he was ordered to serve on two counts of murder and one count of robbery was inappropriate. While Vennard maintains that the trial court appropriately sentenced him to fifty-five year consecutive terms on the murder count, he argues that the robbery conviction should be reduced to a class B felony. Moreover, Vennard maintains that any sentence imposed for robbery should be ordered to run concurrent with the murder sentence. In other words, Vennard argues that the appropriate aggregate sentence in

---

1. Ind.Code § 35–42–5–1.

this case should be 110 years. Appellant's Br. p. 48.

Concluding that the evidence was sufficient to support Vennard's conviction for robbery, yet observing that he may not be convicted and sentenced for that offense as a class A felony because of double jeopardy prohibitions, we remand this case to the trial court with instructions that a judgment of conviction for robbery be entered as a class B felony.

We also instruct the trial court to enter the minimum sentence of six years on that offense[2] to run consecutive to the sentence imposed on the murder convictions. Thus, a corrected sentencing order should be issued reflecting an aggregate sentence of 116 years.

## FACTS

The facts most favorable to the verdict are that on August 8, 2001, at approximately 2:45 a.m., James Hitt was asleep in his Vincennes home when he heard a knock on his door. When Hitt answered the door, he noticed nineteen-year-old Vennard standing out front wearing bloody socks on his hands. Vennard told Hitt that he had just killed his father, Darrell McKendree, and his stepmother, Marjorie. Specifically, Vennard stated that had just "slashed his dad's f____g throat," "cut up" his step-mom and "went through" their pockets. Tr. p. 692, 1189, 1188–89, 1195–96.

Vennard then produced some bloody dollar bills, a bag of marijuana with blood on it and a package of Marlboro cigarettes from his pockets and showed those items to Hitt. The two then walked to the McKendrees' residence in an effort to determine whether Marjorie and Darrell were still alive. While en route to their house, the two men picked up another acquaintance, Tom King, to accompany them.

When the three arrived at the house, Hitt and King saw the McKendrees' bodies lying on the floor inside. One of the men called "911," and reported the incident to the police. Tr. p. 695–98, 1172–74, 1179. After Officer James Dotson of the Vincennes Police Department arrived at the scene to investigate, he noticed an empty wallet near Darrell's head. Darrell's back pocket had been ripped, his front pocket lining was turned inside out, and a marijuana pipe, knife, and package of Marlboro cigarettes were on the floor. Officer Dotson observed that both of the McKendrees' throats had been slashed with repeated strokes of a knife and each of them had a knife plunged into one of their eyes. A knife was found buried in one of Marjorie's eyes and one of her ears had been severed and placed in her mouth. It was also established that the majority of the stab wounds were inflicted "post-mortem," including the injuries to the victims' eyes. Tr. p. 831–34, 839–40, 859–65, 871. The police investigation ultimately revealed that Darrell died as a result of blood loss due to the "transection of his left carotid artery and jugular vein." Tr. p. 838, 848–49. Marjorie had died in a similar fashion.

As a result of this incident, Vennard was charged with one count of robbery as a class A felony, and two counts of murder. At a jury trial that commenced in March 2003, Vennard's mother testified that she gave Vennard approximately $150 the day before the murders, which represented the wages that Vennard had earned at his corn detasseling job. However, King and Hitt acknowledged that Vennard showed them only a "few dollars" shortly after the incident had occurred. Tr. p. 1264–66.

---

**2.** Ind.Code § 35–50–2–5.

Vennard was found guilty as charged, and at the sentencing hearing on April 25, 2003, the trial court noted the following aggravating factors: (1) Vennard's delinquent activity as a juvenile; (2) Vennard needs correctional treatment that will best be provided by a penal facility; (3) Vennard demonstrated no remorse for his actions; and (4) the heinous nature of the offense. In turn, Vennard's history of mental illness and his age at the time of the offense were considered mitigating circumstances. The trial court then determined that the aggravators far outweighed the mitigators, and, in the end, Vennard was sentenced to fifty-five years for each murder with those sentences to run consecutively. He was also sentenced to twenty years—the minimum allowed by statute for a class A felony—on the robbery count.[3] That term was also ordered to run consecutive to the sentences imposed for murder, thus resulting in an aggregate term of 130 years. Vennard now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

■ Vennard first contends that the evidence was insufficient to support the conviction for the robbery of McKendree. Specifically, he maintains that the State failed to establish that Vennard took any money from Darrell.[4] In essence, Vennard argues that the robbery conviction must be vacated because the mere fact that there was blood on the money that the witnesses observed in Vennard's possession shortly after the murders "doesn't establish that the money came from Darrell." Appellant's Br. p. 39.

In resolving this issue, we initially observe that this court will affirm a defendant's conviction if, considering only the probative evidence and reasonable inferences supporting the trial court's judgment, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Rogers v. State*, 741 N.E.2d 395, 396 (Ind. Ct.App.2000), *trans. denied.* When a conviction is based on circumstantial evidence, this court will not disturb the verdict if the fact finder could reasonably infer from the evidence presented that the defendant is guilty beyond a reasonable doubt. *Hawkins v. State*, 794 N.E.2d 1158, 1164 (Ind. Ct.App.2003). Additionally, the circumstantial evidence need not overcome every reasonable hypothesis of innocence; the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

To convict Vennard for robbery as a class A felony, the State was required to prove beyond a reasonable doubt that Vennard knowingly took property from Darrell by using force while armed with a deadly weapon that resulted in serious bodily injury to Darrell. *See* I.C. § 35–42–5–1. The State's information charging Vennard with this offense read as follows:

On or about August 8, 2001, in Knox County, State of Indiana, Jeremy L. Vennard did knowingly take property, to-wit: money; by using force; from Darrell McKendree; while armed with a

---

3. It is apparent that the trial court sentenced Vennard to the minimum sentence for the class A felony robbery in light of a psychiatrist's acknowledgment at trial that Vennard's decision to rob Darrell was probably an "afterthought" and not the primary reason for the killings. Tr. p. 1569–70.

4. We note that Vennard makes no challenge regarding the time sequence as to when the offenses, i.e., the robbery and the murder, occurred.

deadly weapon, to-wit: a knife, which resulted in serious bodily injury to Darrell McKendree.

Appellant's App. p. 402.

In this case, the State presented evidence at trial that Vennard told Hitt that he had stabbed the McKendrees and had searched Darrell's pockets. During the investigation, the police found no money in Darrell's wallet, and the few dollar bills that Vennard showed to Hitt were bloody. Vennard was also wearing bloody socks on his hands and arms when he arrived at Hitt's residence, and the police noticed that Darrell's pockets had been either ripped out or turned inside out. This evidence certainly gives rise to the inference that Vennard took the money from Darrell. Moreover, inasmuch as Vennard admitted that he had slashed Darrell's throat, the jury could reasonably infer that Vennard took the money from Darrell through the use of force.

Finally, we note that although Vennard's mother testified that she had given her son $150 the day before the murders, the evidence establishing that Hitt saw Vennard in possession of only a few bloody dollar bills permits the inference that Vennard did not have the same money that his mother had given him following the incident. Therefore, when considering all of the evidence that was presented at trial, we conclude that the evidence was sufficient to support Vennard's conviction for robbery.

## II. Double Jeopardy

■ Vennard next argues that his conviction and sentence for robbery as a class A felony must be vacated in light of double jeopardy principles. Specifically, Vennard maintains that this conviction cannot stand because it was based upon the same "serious bodily injury" that was the basis for the conviction for Darrell's murder. Appellant's Br. p. 39. The State concedes this point.

■ In addressing this issue, we note that Indiana courts have "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson [v. State*, 717 N.E.2d 32 (Ind. 1999) ]." *Simmons v. State*, 793 N.E.2d 321, 327 (Ind.Ct.App.2003). Our supreme court employed Justice Sullivan's analysis from *Richardson* and concluded that five situations will violate the double jeopardy prohibition of the Indiana Constitution. *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind.2002) (citing *Richardson*, 717 N.E.2d at 55 (Sullivan, J., concurring)). Quoting from Justice Sullivan's concurrence in *Richardson*, the *Guyton* court noted that the following situations violate Indiana's double jeopardy clause: (1) "conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; (2) "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; (3) "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; (4) "conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished"; and (5) "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Id.*

Our supreme court has specifically determined that when there is a "reasonable possibility that the jury may have used evidentiary facts establishing all the essential elements of robbery as a Class A felony to establish all the essential elements of murder," a violation of the Indiana Double Jeopardy Clause results. *Gross v. State*, 769 N.E.2d 1136, 1139 (Ind. 2002) (citing *Kingery v. State*, 659 N.E.2d 490, 495–96 (Ind.1995)). In such cases, it is appropriate to reduce the robbery conviction to a class B felony if supported by the evidence. *Id.* The court in *Gross* went on to note that "where a single act forms the basis of both a Class A felony robbery conviction and also the act element of the murder conviction, the two cannot stand." *Id.* (citing *Kingery*, 659 N.E.2d at 495–96).

In this case, the robbery charge set forth in count III of the charging information alleged that Vennard used force and a knife to take money from Darrell that resulted in serious bodily injury to Darrell. Appellant's App. p. 9. It is thus apparent that the same force and use of a knife that resulted in Darrell's "serious bodily injury," i.e., his death, was used to establish the murder conviction. Therefore, Vennard's conviction and sentence for robbery as a class A felony must be vacated.

That said, we also observe that the trial court instructed the jury on class B felony robbery. In such a circumstance, we are only required to set aside the conviction as an A felony and remand the cause to the trial court with instructions that it enter a judgment of conviction for robbery as a class B felony. *See Gross*, 769 N.E.2d at 1139–40.

### III. Sentencing

Finally, Vennard argues that if we vacate the robbery conviction as a class A felony and reduce the conviction to a class B felony, he is entitled to a resentencing on that offense. Moreover, Vennard makes the claim that the aggregate sentence that the trial court imposed was inappropriate in light of the nature of these offenses and his character. He contends that any sentence that the trial court might order on the robbery conviction should be ordered to run concurrent with the sentences for murder. Therefore, Vennard concludes that he should only serve an aggregate sentence of 110 years.

In resolving this issue, we initially observe that sentencing decisions lie within the trial court's discretion. *Echols v. State*, 722 N.E.2d 805, 808 (Ind.2000). We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Moreover, we do not conduct de novo review of sentences. *Sallee v. State*, 777 N.E.2d 1204, 1216 (Ind.Ct.App.2002), *trans. denied.* This court has adopted the following standards to guide appellate review of sentences for appropriateness:

When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Hildebrandt v. State*, 770 N.E.2d 355, 361 (Ind.Ct.App. 2002), *trans. denied.* Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors which must be considered pursuant to I.C. § 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Hildebrandt*, 770 N.E.2d at 361.

The presumptive sentence is meant to be the starting point for the trial court's consideration of the sentence that is appropriate for the crime committed. *See Lander v. State*, 762 N.E.2d 1208, 1214–15 (Ind.2002).

*Rodriguez v. State*, 785 N.E.2d 1169, 1179 (Ind.Ct.App.2003), *trans. denied.*

█ In this case, Vennard was sentenced to the presumptive sentence of fifty-five years for each of the murder convictions with those sentences to run consecutively. As set forth above, Vennard challenges neither the term of this sentence nor the order that the sentences should run consecutive to each other. Rather, he asserts that this cause must be remanded to the trial court so that it may order any sentence imposed for robbery to run concurrent with the murder sentences.

We do not disagree with the trial court's assessment of aggravating and mitigating circumstances. In our view, the trial court was correct in finding that Vennard's juvenile delinquent history, his lack of remorse, the heinous nature of the offense, along with the determination that he was in need of correctional treatment best provided by a penal facility, were all appropriate aggravating factors. We also agree with the trial court's determination that the only mitigating circumstances apparent on the record were his age at the time the offenses were committed and his mental illness. Moreover, we share in the trial court's determination that the aggravating circumstances outweighed the mitigating factors.

That said, because the trial court initially ordered Vennard to serve the minimum sentence for class A felony robbery, we similarly conclude that Vennard should serve the six-year minimum sentence permitted by statute for class B felony robbery once the correction to the judgment is made. We further observe that this sentence should be served consecutive to those for murder. We therefore remand this case with instructions that the trial court vacate the conviction and sentence for class A felony robbery, enter a convic-tion in its stead as a class B felony and impose the minimum sentence of 6 years on that offense. That sentence shall be ordered to run consecutive to the sentences imposed for murder, thus resulting in an aggregate sentence of 116 years.

The judgment of the trial court is affirmed in part, reversed in part and remanded for a correction of the judgment and sentence.

NAJAM, J., and MAY, J., concur.